**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KINGSVILLE DODGE, LLC : | |
|    Appellant : | |
| : | |
| v. : | |
| : | |
| MONIQUE D. ALMY, Trustee, *et al*. : | Civil No. CCB-07-154 |
|    Appellee/Cross Appellant : | |
| : | |
| v. : | |
| : | |
| WILLIAM BELL, *et al.* : | |
|    Cross Appellees : | |
| : | |

## MEMORANDUM

Currently pending before the court are an appeal and cross-appeal of an Order by the United States Bankruptcy Court for the District of Maryland. The parties have fully briefed the motion and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the bankruptcy court's order will be affirmed.

## BACKGROUND

Kingsville Motors, the debtor in this case, was placed into involuntary bankruptcy by its creditors. Five months prior to that, William Bell, former president and 100% shareholder of Kingsville Motors, and his wife, Lucia Bell, who served on the company's board of directors, approved the sale of substantially all of the debtor's assets to an unrelated third party, Howard Castleman, operating as Kingsville Dodge, LLC, for $200,000. The sale of Kingsville Motors[1]

---

      [1] The company name "Kingsville Motors" will be used throughout this opinion to refer to the dealership's showroom, the property on which the showroom was located, and all other business assets of the dealership.

was part of a larger structured transaction in which Mr. Castleman also purchased three other adjacent parcels of land, which served as the dealership's customer and inventory parking.[2] In addition, Mr. Castleman set aside $167,500 for Lucia Bell to serve as a consultant to Kingsville Dodge pursuant to an independent contractor agreement.[3] (Pl.'s Trial Ex. 10.)

Appointed Chapter 7 Trustee for Kingsville Motors, appellee, Monique D. Almy ("Almy"), brought the underlying adversary proceeding against William and Lucia Bell, alleging that, in their capacity as directors of Kingsville Motors, they fraudulently conveyed $167,500 to Lucia Bell under the guise of the consulting agreement when they approved the sale of the debtor's assets to Mr. Castleman and Kingsville Dodge knowing that the company was insolvent. Almy further alleged that this act constituted a breach of the Bells' fiduciary duties owed to the debtor's creditors.

A two-day trial was held before Bankruptcy Judge Duncan Keir on the Trustee's Second Amended Complaint, which included three counts: (I) fraud; (II) constructive fraud; and (III) breach of fiduciary duty. At the close of the Trustee's case, the bankruptcy court granted judgment on Count I in favor of defendants Kingsville Dodge and the Bells. (Trial Tr. 74, Dec. 6, 2006.) Following the trial's conclusion, Judge Keir, in an oral opinion, held for the Trustee on Count II and for the Bells on Count III. (Trial Tr. 67-69, Dec. 7, 2006.) Finding that the

---

[2] Each parcel had different ownerships, with one owned by William and Lucia Bell, another by William Bell and his brother, Wendell Bell, and the third by Wendell Bell and his wife.

[3] The contract contemplated three years of employment as a "good will ambassador," with payments made annually. (Pl.'s Trial Ex. 10.) After paying Mrs. Bell $67,307.60, Kingsville Dodge ceased payment upon receiving notice of the Trustee's claims, leaving $100,192.40 unpaid under the contract. (Pl.'s Trial Ex. 13.)

diversion of the debtor's assets vis-à-vis the consulting agreement constituted a fraudulent conveyance, the bankruptcy court held the transfer avoidable and ordered all past and future monies owed under the contract to be paid to the debtor's estate. (Docket Entry No. 1, Order.) Reasoning that the Bells relied on counsel in deciding to approve the sale, however, Judge Keir held that the Bells had not breached their fiduciary duties to the debtor's creditors. (Trial Tr. 67-69, Dec. 7, 2006.)

Kingsville Dodge has appealed Judge Keir's ruling on Count II, with the Bells concurring,[4] while the Trustee has appealed the bankruptcy court's ruling on Count III.

## ANALYSIS

### I. Standard of Review

This court reviews the bankruptcy court's findings of fact for clear error, *see* Fed. R. Bankr. P. 8013, and its conclusions of law de novo. *See In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001); *In re Gibson*, 300 B.R. 866, 868 (D. Md. 2003). A factual finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made, *see In re Green*, 934 F.2d 568, 570 (4th Cir. 1991), with due regard "given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

### II. Fraudulent Conveyance

---

[4] Almy argues that Kingsville Dodge does not have standing to appeal Count II because the company is not adversely affected by the bankruptcy court's ruling. (The Bells did not file any notice of appeal, but have participated in the briefing). Kingsville Dodge responds, however, that it has standing because it has been ordered by the bankruptcy court to pay the balance of the consulting contract to the Trustee. Given this court's holding on the merits in favor of the Trustee on Count II it is not necessary to resolve the issue of Kingsville Dodge's standing.

3

Kingsville Dodge is appealing the bankruptcy court's holding that the $167,500 paid to Lucia Bell under the consulting contract constituted a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) and Md. Commercial Law § 15-204.  Both federal and Maryland state law require as elements of a fraudulent conveyance: (1) a transfer in interest; (2) by an insolvent or soon to be insolvent debtor; (3) for less than fair consideration or reasonably equivalent value.  *See* 11 U.S.C. § 548(a)(1)(B); Md. Commercial Law § 15-204.[5]  In determining what constitutes fair consideration or reasonably equivalent value, a Trustee must present evidence of the transferred assets' value and show that the consideration received did not approximate this value.  *See In re Curtina*, 23 B.R. 969, 974 (Bankr. S.D.N.Y. 1982).  A court should then apply a totality-of-the-circumstances test to determine whether the transaction was constructively fraudulent, considering such factors as the good faith of the transferee, the difference between the sale price and the fair market value, and "whether the sale was 'an arm's length transaction between a

---

[5] 11 U.S.C. § 548 states, in relevant part,

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

. . . (B)(i) received less than a reasonably equivalent value in exchange for
     such transfer or obligation; and
     (ii)(I) was insolvent on the date that such transfer was made or such
     obligation was incurred, or became insolvent as a result of such transfer
     or obligation . . .

Maryland's Uniform Fraudulent Conveyance Act similarly provides: "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."  Md. Commercial Law § 15-204.

willing buyer and a willing seller.'" *In re Morris Commc'ns, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990) (citing *Bundles v. Baker*, 856 F.2d 815, 824 (7th Cir. 1988); *In re Brown*, 126 B.R. 481, 484 (Bankr. D. Md. 1991); *see also* Md. Commercial Law § 15-203.[6]

The parties do not dispute that the first two elements are met in this case. Thus, the issue presented is whether Kingsville Motors received less than reasonably equivalent value in exchange for the sale of its business assets. Arguing that the Trustee failed to introduce any evidence of the value of the debtor's assets, Kingsville Dodge asserts that the bankruptcy court improperly attributed all of the sums payable under Lucia Bell's independent contractor agreement to the debtor's estate even though the total purchase price included allocations for three other properties with different ownerships.

Judge Keir concluded that the consulting agreement with Lucia Bell added no value to the transaction in favor of Mr. Castleman, who cared only about the dealership's total purchase price. (Trial Tr. 64-66, Dec. 6, 2006.) Castleman was not concerned with whether Lucia or William Bell served as the consultant. (*Id*. at 65.) Judge Keir further found that the Bells had set the initial offering price and had requested the consulting contract. (*Id*.) Given the insider status of Lucia Bell, the bankruptcy court held that the price paid for the consulting agreement was money diverted from the purchase price of Kingsville Motors. (*Id*. at 66.) Thus, the court found that the value of Kingsville Motors at the time of its sale was $367,500.

These findings of fact are not clear error. The record shows that Lucia Bell did little work as a goodwill ambassador. (Pl. Trial Ex. 12 at 32.) Mr. Bell even understood the

---

[6] Md. Commercial Law § 15-203 states, in relevant part: "Fair consideration is given for property or an obligation, if: (1) in exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied . . . ."

5

consulting agreement as paying Mrs. Bell "for nothing."  (Pl. Trial Ex. 11 at 36-37.)  Given that a company's goodwill constitutes part of its business assets, the evidence on record is sufficient to attribute the $167,500 for the consulting agreement to the market value of the debtor's estate.  Consequently, in light of Mrs. Bell's insider status and the large difference between the $200,000[7] received for the debtor's estate compared to its market value of $367,500, the bankruptcy court's holding that Kingsville Motors's purchase price did not constitute fair consideration or reasonably equivalent value is affirmed.  *See Curtina*, 23 B.R. at 974 (recognizing "the classical fact pattern where a transfer is presumed to be a fraud upon the creditors of an estate because it is a transfer to an insider or a relative for questionable consideration").

### III. Reliance on Advice of Counsel

Md. Corps. & Ass'ns § 2-405.1 provides, in relevant part:

(a) In general. – A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves:

   (1) In good faith;

   (2) In a manner he reasonably believes to be in the best interests of the corporation; and

   (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

(b) Reliance on information from others. –

   (1) In performing his duties, a director is entitled to rely on any information,

---

[7] There is some dispute as to the actual value received for the debtor's assets given that Mr. Castleman also paid $53,200 to take over two of the debtor's leases.  Nonetheless, the bankruptcy court's finding that the estate was significantly undervalued is not affected by this fact.

6

> opinion, report, or statement, including any financial statement or other financial data, prepared or presented by: . . .
>
> > (ii) A lawyer, certified public accountant, or other person, as to a matter which the director reasonably believes to be within the person's professional or expert competence; . . .

A director is presumed to satisfy subsection 2-405.1(a). Md. Corps. & Ass'ns § 2-405.1(e). Provided a director meets the standard of care outlined in § 2-405.1, he cannot be held liable in Maryland "by reason of being or having been a director of a corporation." Md. Cts. & Jud. Proc. § 5-417, Md. Corps. & Ass'ns § 2-405(c). Although the Maryland Court of Appeals has noted that the duties embodied in the above statute run to the corporation, *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001), the Fourth Circuit has stated that when a "corporation becomes insolvent, the fiduciary duty of the directors shifts from the stockholders to the creditors." *Federal Deposit Ins. Corp. v. Sea Pines Co.*, 692 F.2d 973, 976-77 (4th Cir. 1982).

In the present case, the Trustee cites to *Yost v. Early*, 589 A.2d 1291, 1298-99 (Md. Ct. Spec. App. 1991), in arguing that reliance on counsel under § 2-405.1(b) is an affirmative defense and grants immunity to directors who do not satisfy the elements of § 2-405.1(a). Consequently, the Trustee asserts the Bells waived this defense by failing to affirmatively plead it in their answer; and the bankruptcy court improperly raised the issue *sua sponte* at trial.[8] *See*

---

[8] The Trustee argues, in any event, that defendants presented insufficient evidence to prove the Bells reasonably and in good faith relied on the advice of their attorney. This court concludes to the contrary. Md. Corps. & Ass'ns § 2-405.1(b)(ii) provides: "A director is not acting in good faith if he has any knowledge concerning the matter in question which would cause [reliance on counsel] to be unwarranted." After "watching the witnesses, observing their demeanor, their sophistication, understanding," Judge Keir found that the Bells' attorney, Mr. Azrael, had believed in good faith that there were "substantial defenses to . . . an avoidance action," and the Bells had relied in good faith on his advice. (Trial Tr. 68, December 7, 2006.) Paying due regard "to the opportunity of the bankruptcy court to judge the credibility of the witnesses," I hold that this finding is not clear error. *See* Fed. R. Bankr. P. 8013. The record

*Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653-57 (4th Cir. 2006).

Generally, a defendant's failure to plead an affirmative defense as required by Rule 8(c) results in the waiver of that defense. *See id*. at 653-54. It is unclear, however, whether reliance on counsel under § 2-405.1(b) constitutes an affirmative defense.[9] In any event, the requirement

---

shows that the Bells and Mr. Azrael lacked complete information regarding the debtor's financial situation. Nevertheless, there is no evidence that the Bells knew this lack of information could lead to a flaw in Mr. Azrael's professional advice regarding the legitimacy of the consulting agreement. Moreover, had the independent contractor agreement been of value to Mr. Castleman, the bankruptcy court may have held that the contract did not constitute a fraudulent conveyance.

[9] *Yost v. Early* appears to treat reliance on the advice of experts as an affirmative defense, but the case does not specifically so hold. 589 A.2d at 1299. Instead, *Yost* is more concerned with burden allocation, opining that once a plaintiff has presented a *prima facie* case sufficient to overcome the business judgment rule's presumption (subsequently codified in § 2-405.1(e)) that a director acted in compliance with § 2-405.1(a), the burden of proof shifts to the "defendant director to demonstrate that he or she met the requirements of § 2-405.1(b)." *Id*. Although Judge Keir noted reliance on counsel by the Bells as one factor in his determination that the defendants had not breached their fiduciary duties to the debtor's creditors, the court did not consider this an absolute defense, as the Trustee interprets § 2-405.1(b). (Trial Tr. 68-69, Dec. 7, 2006); *see Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) ("While such factors may not alone be dispositive, decisions which reflect independent and professional advice serve to reduce the appearance of self-serving action.") Indeed, various legal commentators have criticized the language employed in *Yost* as over-inclusive. *See* Randolph Sergent, *The Corp. Director's Duty of Care in Md.: Section 2-401.1 and the Bus. Judgment Rule*, 44 How. L.J. 191, 230-31 (2001); James J. Hanks, Jr., Maryland Corp. Law § 6.7 at 181, n.117 (2005) (writing, "[t]he *Yost* court overstated the role of § 2-405.1(b) . . . . A director may properly rely on a source of information provided under § 2-405.1(b) and still fail to meet one of the three elements of § 2-405.1(a)").

Given the lack of any authoritative decisions by the Maryland Court of Appeals interpreting § 2-405.1, it is unclear whether the court would consider reliance on counsel an affirmative defense. The defense is not one in Maryland that must be affirmatively pled or will be considered waived. *See* Md. Rule § 2-323; *Ben Lewis Plumbing, Heating & Air Conditioning, Inc. v. Liberty Mut. Ins. Co.*, 731 A.2d 904, 911-13 (Md. 1999). While federal civil procedure rules are more inclusive in terms of those defenses that must be pled or waived, there is similarly no federal case law interpreting the statutory safe harbor provision. *See* Fed. R. Civ. P. 8(c).

Black's Law Dictionary 186 (2d Pocket Ed. 2001) defines an affirmative defense as a "defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or

8

of Rule 8(c) is not dispositive in the instant case.

Where an affirmative defense was not raised until the summary judgment stage, the Fourth Circuit has held that a defendant should not be found to have waived an affirmative defense absent unfair surprise or prejudice to the plaintiff. *See Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 612 (4th Cir. 1999); *Chase v. Peay*, 286 F. Supp. 2d 523, 531 (D. Md. 2003); *see also Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). Under Fed. R. Civ. P. 15(b), incorporated by Fed. R. Bankr. P. 7015, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Thus, "[e]ven as late as the trial, if evidence relating to an unpleaded affirmative defense is introduced without objection, Rule 15(b) requires the pleadings to be treated as if they actually had raised the defensive issue." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (3d ed. 2007); *see also Clark v. Martinez*, 295 F.3d 809, 815 (8th Cir. 2002). This reflects "the underlying spirit of the Federal Rules that cases should be decided upon their merits, rather than upon technical deficiencies in the pleadings." *Lomartira v. American Auto. Ins. Co.*, 245 F. Supp. 124, 129 (D. Conn. 1965); *see also Holley Coal Co. v. Globe Indemnity Co.*, 186 F.2d 291, 295 (4th Cir. 1950).

The language of Md. Corps. & Ass'ns § 2-405.1(a) clearly raises a director's reliance on

---

prosecution's claim, even if all allegations in the complaint are true." Thus, the Fourth Circuit has noted, "[g]enerally speaking, affirmative defenses 'share[ ] the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to.'" *See Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 271 (4th Cir. 2003) (quoting *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995)). Whether reliance on counsel under 2-405.1(b) is an affirmative defense need not be resolved at this time, however, given the court's holding that it was implicitly raised by counsel and thus must be incorporated into the pleadings by Fed. R. Civ. P. 15(b).

the advice of counsel as an issue to consider in determining whether a director can be held liable for breach of fiduciary duty.  Against this statutory background, the Bells testified in their depositions that their attorney, John Azrael, negotiated the details of the dealership's sale, including price, with Mr. Castleman.  (Bell Opp'n, Ex. 1, Lucia Bell Dep. at 11, 18, 22-23, 25-28 & William Bell Dep. at 37-39, 41.)  Moreover, the Trustee brought out the issue at trial through her direct examination of William Bell and cross-examination of Mr. Azrael.  (Trial Tr. 20, 118, 121, Dec. 6, 2006.)  Indeed, it appears from the Trustee's questioning that she was attempting to show that the Bells' reliance on the advice of Mr. Azrael was unwarranted under § 2-405.1(b)(ii).  (*See* Trial Tr. 25-26, 110-11, Dec. 6, 2006.)  Therefore, under Rule 15(b), the defense will be held to have been raised by the pleadings and not waived by the defendants.

Given the court's finding that the Bells relied in good faith on the advice of their counsel, which is amply supported in the record, as well as the evidence that Mr. Felder's control over the Chrysler franchise substantially limited the Bells' options regarding the sale of Kingsville Motors (*see, e.g.*, Trial Tr. 83-84, Dec. 6, 2006), there is sufficient evidence to support the bankruptcy court's holding that the Bells did not breach their director's duties.  *See Billman v. Maryland Deposit Ins. Fund Corp.*, 593 A.2d 684, 697 (1991); *see also* Maryland Corp. Law § 6.6(b) at 171 (noting that Maryland courts "require proof of gross or culpable negligence" to recover money damages for breach of a director's duties).  Consequently, the bankruptcy court's ruling will be affirmed.

A separate order follows.

| | |
|---|---|
|  July 30, 2007  |     /s/     |
| Date | Catherine C. Blake |

                                       United States District Judge